UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON L. KOELBL, *et al.*, | ) | CASE NO.  1:24-cv-02043 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| THE SHERWIN-WILLIAMS COMPANY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant The Sherwin-Williams Company's ("Sherwin-Williams" or "Defendant") Motion to Compel Arbitration.  (Doc. 25.)  Plaintiff Shannon Koelbl ("Mr. Koelbl") and Theresa Koelbl ("Ms. Koelbl") (together "Plaintiffs") responded in opposition.  (Doc. 31.)  Sherwin-Williams replied.  (Doc. 34.)  Also before the Court is Sherwin-Williams' Motion to Dismiss.  (Doc. 26.)  That Motion is fully briefed.  (Docs. 30, 35.)  For the reasons stated herein, Sherwin-Williams' Motion to Compel Arbitration is GRANTED, and this matter is STAYED.  The Motion to Dismiss is DENIED without prejudice.

I.  **BACKGROUND**

   A.  **Factual Allegations**

      1.  **Plaintiffs' Employment and Arbitration Agreement**

Between 2021 and 2023, Sherwin-Williams employed Mr. Koelbl as a mechanic in Elkhart, Indiana.  (Doc. 20 at 177, ¶ 9.)  Sherwin-Williams also employed Ms. Koelbl as a production operator from 2022 through 2023.[1]  (Doc. 25 at 226.)  Mr. Koelbl and Ms. Koelbl

---

[1] The First Amended Complaint ("FAC") does not specifically address Ms. Koelbl's employment with Sherwin-Williams.  Instead, it states she is a dependent of Mr. Koelbl's benefits.  (Doc. 20 at 177, ¶ 9.)  In its motion to compel, Sherwin-Williams explained it employed Ms. Koelbl from 2022 to 2023.  (Doc. 25.)

signed offer letters dated November 12, 2021, and October 6, 2022, respectively. (Doc. 25-1 at 242, 245, 255.)[2] The letters attached Sherwin-Williams' Employment Dispute Mediation & Arbitration Agreement (the "Agreement"). (*Id.* at 242.) The Agreement requires employees to resolve any "Covered Disputes" in arbitration. (*Id.* at 246.) With respect to "Covered Disputes," the Agreement states, in relevant part:

> Except as excluded in Section 2(b), this Agreement covers all disputes of any kind between you and the Company that would support a legal cause of action, including, but not limited to, disputes relating to . . . wages, hours, compensation, or other terms or conditions of employment . . . and claims arising under any federal, state, and local laws applicable to employees or the employment relationship[.]

(*Id.*) Excluded from "Covered Disputes" are "claims for benefits under a Company benefit plan or program that provides its own process for dispute resolution and/or arbitration of disputes." (*Id.* at 247.) The Agreement requires individual arbitration for any "Covered Dispute," and prohibits class, collective, and representative actions. (*Id.* at 250.) It states:

> Except as prohibited by applicable law, the parties agree that they will bring claims for Covered Disputes against one another only in an individual capacity and will not bring such claims or participate in such claims as a class representative, or as a member of any purported class, collective, representative, or aggregate proceeding. Except as prohibited by applicable law, the parties expressly waive the right to bring, or participate in, any claim for a Covered Dispute as part of any class, collective, representative, or aggregate proceeding.

(*Id.*) The parties refer to this provision as a "class waiver."

Lastly, as relevant here, the Agreement includes a delegation provision. (*Id.* at 250-51.) That provision states:

> Any dispute concerning this Agreement – including concerning the way it was formed; the arbitrability of any claim; enforceability, meaning, interpretation, or validity; any dispute about rescission or waiver of the right or obligation to arbitrate; or any claim that all or part of this Agreement is void or voidable – is

---

[2] Though not alleged in the complaint, a court can consider matters outside of the pleadings when considering a motion to compel arbitration. *Andrews v. Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014).

>subject to arbitration under this Agreement and will be decided by the arbitrator; except that any dispute over the legality of the prohibition on class, collective, representative, aggregate or group actions will be decided by a court and not the arbitrator. In the event that a court were to determine that a class, collective, aggregate, or group action could proceed (despite the prohibition in this Agreement), then such resulting action must be brought and maintained in a court, not before an arbitrator. Any claims or disputes regarding the payment of costs for the arbitrator, the administrator, or the forum for arbitration, including the timing of such payments, the remedies for nonpayment and whether the costs are unconscionable under applicable law, will be determined exclusively by an arbitrator, and not by any court.

(*Id.*)

### 2. The ERISA Plan

Plaintiffs participated in Sherwin-Williams' group health plan, known as the Group Health and Welfare Benefits Plan for The Sherwin-Williams Company ("the Plan"). (*Id.* at 175-76, 177, ¶¶ 2, 9.) Participating employees and eligible dependents must declare tobacco use. (*Id.* at 176, ¶ 3.) If an employee or eligible dependent is a tobacco user, they pay an additional $600 per year (or $11.54 per week) to maintain coverage. (*Id.*) Mr. Koelbl declared himself a tobacco user and paid the surcharge to participate in the Plan. (*Id.* at 177, ¶ 9.)

Plaintiffs acknowledge this type of arrangement is not *per se* invalid, but allege the Plan adopted and implemented by Sherwin-Williams does not comply with the Employee Retirement Income Security Act ("ERISA"). (*Id.* at 181, ¶¶ 23-24.) Plaintiffs allege the Patient Protection and Affordable Care Act amended ERISA to prohibit plans from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor." (*Id.* at 179, ¶ 19.) Tobacco use is a "health status-related factor." (*Id.*) But an exception exists to this anti-discrimination mandate: programs designed to promote health or prevent disease, otherwise known as "wellness programs." (*Id.* at 181, ¶ 23.) To qualify as a wellness program, a plan must comply with relevant statutory and regulatory requirements. (*Id.* at 181, ¶ 24.)

Among others, those regulations concern: (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. (*Id.*) Plaintiffs allege the Plan fails this statutory and regulatory scheme in several ways.

### B. Procedural History

On November 21, 2024, Plaintiffs filed their Class and Representative Action Complaint. (Doc. 1.) On February 20, 2025, Sherwin-Williams moved to compel arbitration (Doc. 15) and moved to dismiss Count Three (Doc. 16). Instead of opposing those motions, on March 13, 2025, Plaintiffs filed an amended complaint. (Doc. 20.) The FAC asserts six claims. (*Id.* at 191, ¶¶ 58-102.)

Count One asserts a violation of ERISA, 29 U.S.C. § 1182(b), for failing to provide a reasonable alternative standard. (*Id.* at 191-92, ¶¶ 58-64.) Count Two asserts a violation of ERISA, 29 U.S.C. § 1182(b), for the failure to provide required notice. (*Id.* at 192-94, ¶¶ 65-71.) Count Three asserts a violation of ERISA, 29 U.S.C. § 1109, for breach of fiduciary duty. (*Id.* at 194-96, ¶¶ 72-79.) Count Four asserts a violation of ERISA, § 502(a)(3), for breach of fiduciary duty and seeks individual relief. (*Id.* at 196-98, ¶¶ 80-86.) Count Five asserts a violation of ERISA, § 502(a)(3), for violating the Plan terms. (*Id.* at 198, ¶¶ 87-90.) Count Six allegedly asserts a claim for benefits under ERISA, § 502(a)(1)(B). (*Id.* at 199, ¶¶ 91-97.) All claims are brought by Plaintiffs on behalf of the Class and Alternative Subclass (as described below). Count Three is also brought on behalf of the Plan.

Plaintiffs bring their claims as a class action. (Doc. 20 at 187, ¶ 48.) They seek certification under Rules 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4). (*Id.*) Plaintiffs'

proposed class consists of:

> All persons within the United States who paid Sherwin-Williams' tobacco surcharge at any time during the relevant limitations period.

(*Id.*)  Alternatively, Ms. Koelbl brings the claims on behalf of herself, and others similarly situated, under Rules 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4).  (*Id.* at 187-88, ¶ 49.)  She seeks certification of a subclass consisting of:

> All persons within the United States who paid Sherwin-Williams' tobacco surcharge at any time during the relevant limitations period and who are not bound by a contract requiring them to arbitrate their claims against Sherwin-Williams.

(*Id.*)  This subclass, Plaintiffs allege, may include covered dependents who did not agree to arbitrate their claims, employees who opted out of arbitration, employees bound by a prior agreement to arbitrate that carved out specific claims relevant here, and any person who was not required to arbitrate their claims.  (*Id.* at 188, ¶ 50.)

On April 25, 2025, Sherwin-Williams filed a Motion to Compel Arbitration as it relates to Counts One, Two, Four, Five, and Six of the FAC.  (Doc. 25.)  As part of the Motion, Sherwin-Williams seeks a stay of the case pending arbitration.  (*Id.*)  Sherwin-Williams separately moved to dismiss Counts Three and Six.  (Doc. 26.)  Plaintiffs opposed both motions (Docs. 30, 31), and Sherwin-Williams replied (Docs. 34, 35).

## II.     ANALYSIS

### A.     Legal Standard

Under the Federal Arbitration Act, courts considering a motion to compel arbitration engage in a limited, two-step review.  *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citation omitted).  In step one, the courts must decide whether there is a valid contract to arbitrate between the parties.  *Id.* (citation omitted).  For step two, the courts must determine whether the parties' dispute falls within the arbitration agreement's scope before it

compels arbitration.  *Id.*

There is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).  Where, as in the instant action, the arbitration clause is broad, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators."  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

Motions to compel arbitration are treated like motions for summary judgment.  *Great Earth Cos., v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party.  *Id.*  "The burden is on the party opposing arbitration to show that the agreement is not enforceable."  *Townsend v. Stand Up Mgmt.*, No. 18-cv-2884, 2019 WL 3729266, 2019 U.S. Dist. LEXIS 133635, *6 (N.D. Ohio Aug. 8, 2022) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).  To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."  *Great Earth*, 288 F.3d at 889.

**B.     Enforceability of the Agreement and Scope**

**1.     Enforceability of the Agreement**

Courts apply "ordinary state-law principles that govern the formation of contracts" to determine if a valid agreement to arbitrate exists.  *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see Morrison v. Circuit City Stores*, 317 F.3d 646, 666 (6th Cir. 2003) (courts "review enforceability of an arbitration agreement according to the applicable state law of contract formation"). While the parties dispute whether Ohio or Indiana law applies (Doc. 25 at 231; Doc. 31 at 662 n.2), the elements of contract formation are the same. *See Rayess v. Educ. Comm'n for Foreign Med. Graduates*, 983 N.E.2d 1267, 1271 (Ohio 2012) ("Essential elements [of contract formation] include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration"); *Martins v. Hill*, 121 N.E.3d 1066, 1068 (Ind. Ct. App. 2019) ("A valid contract requires offer, acceptance, consideration, and manifestation of mutual assent.").

The parties do not dispute a valid agreement to arbitrate exists. (Doc. 25 at 231; Doc. 31 at 662.) Sherwin-Williams submitted evidence Plaintiffs were presented with the Agreement and signed the Agreement electronically. (Doc. 25 at 231-32; Doc. 25-1 at 241-42.) Mr. Koelbl received his offer letter, which included the Agreement, on November 12, 2021. (Doc. 25-1 at 242.) Similarly, Ms. Koelbl received her offer letter on October 6, 2022, with the same attachments. (*Id.*) Both Plaintiffs signed the offer letters on the same day they received them. (*Id.* at 243.) Plaintiffs do not dispute these facts. Accordingly, a valid agreement to arbitrate exists.

    **2.**    **Scope of the Agreement**

Once a court determines a valid agreement to arbitrate exists, it must next "determine whether the various disputes fall within the scope of the arbitration agreements." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 628 (6th Cir. 2003). "Determining the scope of an arbitration agreement 'is simply a matter of contract between the parties;' courts must seek 'to resolve those

disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *O's Versatility Constr. LLC v. Cleveland Constr., Inc.*, 792 F.Supp.3d 815, 827 (N.D. Ohio 2025) (quoting *Int'l Ass'n of Machinists & Aero. Workers v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010)).  When determining scope, "[a] proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).  Ambiguities in an agreement's scope are "resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.

In addition to defining the scope of claims subject to arbitration, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69, 139 S.Ct. 524, 1202 L.Ed.2d 480 (2019)).  Thus, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (citing *First Options*, 514 U.S. at 944).  "Such a choice is typically evidenced in a so-called 'delegation' clause or provision." *In re StockX*, 19 F.4th at 878 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)).

Plaintiffs do not dispute Counts One, Two, Four, and Five are "Covered Disputes" under the Agreement.[3]  Nonetheless, Plaintiffs argue these claims fall outside the scope of the

---

[3] Plaintiffs argue Count Six is not a "Covered Dispute."  One exclusion to "Covered Disputes" is "claims for benefits under a Company benefit plan or program that provides its own process for dispute resolution and/or arbitration of disputes." (Doc. 25-1 at 247.)  Sherwin-Williams argues

Agreement by operation of the class waiver and related provisions.  (Doc. 31 at 664.)  Count Three asserts a claim for breach of fiduciary duty under ERISA § 502(a)(3).  (Doc. 20 at 194, ¶ 72.)  It is undisputed Count Three is a "Covered Dispute" subject to the class waiver provision in the Agreement.  However, the class waiver as it relates to Count Three is unenforceable pursuant to *Parker v. Tenneco, Inc.*, 114 F.4th 786 (6th Cir. 2024).

In *Parker*, the Sixth Circuit held arbitration agreements with class action waivers were unenforceable as it relates to breach of fiduciary duty claims under ERISA.  *Id.* at 798.  Invoking the "effective vindication" doctrine, the court explained arbitration clauses cannot act as a "prospective waiver of a party's right to pursue statutory remedies."  *Id.* at 792.  Thus, "if an arbitration agreement forbids the assertion of certain statutory rights, the effective vindication doctrine" invalidates the waiver.  *Id.* at 793 (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013)).  As applied to a breach of fiduciary duty claim under ERISA, ERISA allows a plaintiff to bring a claim on behalf of the plan for plan-wide relief for breach of fiduciary duty.  *Id.* at 798.  A class waiver restricts the ability to bring plan-wide relief, and therefore, denies a plaintiff the right to invoke statutory rights otherwise guaranteed.  *Id.*

Plaintiffs argue that because Count Three cannot proceed in individual arbitration, the remaining claims also cannot proceed in arbitration.  (Doc. 31 at 664.)  In support, Plaintiffs cite the Agreement, specifically, the language "[i]n the event that a court were to determine that a class, collective, aggregate, or group action could proceed (despite the prohibition in this

---

Plaintiffs mislabeled Count Six as a claim for benefits to avoid arbitration, but the claim does not relate to any claim for benefits and is instead substantively like the other counts that are subject to arbitration.  (Doc. 25 at 235.)  This issue need not be resolved now because for the reasons explained below, the parties delegated this question to the arbitrator.

Agreement), then such resulting action must be brought and maintained in a court, not before an arbitrator." (Doc. 31 at 665.)  Calling this provision a non-severability clause, Plaintiffs argue the remaining claims in the FAC must proceed along with Count Three in this Court even though those claims would otherwise be subject to arbitration.  (*Id.*)  That is, because Count Three cannot proceed to arbitration, the "*resulting action* must be brought and maintained in court." (*Id.* at 665-66.)  Plaintiffs argue the phrase "such resulting action" means the entire case, not just the particular claim.  (*Id.* at 666.)  Plaintiffs also cite cases such as *Parker* where the arbitration agreements contained non-severability clauses which required all claims to proceed in court after invalidating the class action waiver.  (*Id.* at 666-67.)

Sherwin-Williams does not dispute *Parker* forbids the enforcement of the class waiver and individual arbitration clauses relating to Count Three.  (Doc. 25 at 224 n.1.)  That is why Sherwin-Williams excluded Count Three from its Motion to Compel Arbitration.  (*Id.*)  That said, as it relates to Counts One, Two, Four, Five, and Six, Sherwin-Williams argues the matter must be compelled to arbitration for at least the threshold issue of whether these claims must be arbitrated or litigated in court.  (*Id.* at 237.)  To Sherwin-Williams, the Agreement expressly delegated threshold questions of arbitrability and interpretation of the Agreement to the arbitrator.  (*Id.*)  Because Plaintiffs' arguments regarding whether Counts One, Two, Four, Five, and Six involve questions of arbitrability and interpretation of the Agreement, Sherwin-Williams argues the matter must be referred to arbitration in the first instance to determine the effect of the class action waiver and related provisions.  (*Id.*)

The Agreement contains a "clear and unmistakable" delegation provision which requires the arbitrator to decide questions of arbitrability and interpretation.  The Agreement states:

> Any dispute concerning this Agreement – including concerning the way it was formed; the arbitrability of any claim; enforceability, meaning, interpretation, or

> validity; any dispute about rescission or waiver of the right or obligation to arbitrate; or any claim that all or part of this Agreement is void or voidable – is subject to arbitration under this Agreement and will be decided by the arbitrator[.]

(Doc. 25-1 at 250.) This provision delegates questions of "the arbitrability of any claim" and any "interpretation" of the Agreement to the arbitrator. (*Id.* at 250-51.) Here, the parties dispute the meaning of the phrase "such resulting action" and whether that phrase requires Counts One, Two, Four, Five, and Six be arbitrated. That dispute is undoubtedly a dispute regarding the "arbitrability of any claim" or the "meaning" and "interpretation" of the Agreement.

Plaintiffs argue the delegation provision excludes from delegation "any dispute over the legality of the prohibition on class, collective, representative, aggregate or group actions" which must "be decided by a court and not the arbitrator." (Doc. 25-1 at 250-51.) Because Plaintiffs argue the Court must decide that question, to Plaintiffs, the Court must also decide whether the phrase "such resulting action" requires the remaining claims to follow Count Three. But the question of whether the remaining claims must be arbitrated is an interpretive question of arbitrability which has been "clearly and unmistakenly" delegated to the arbitrator. That is, because there is a valid agreement to arbitrate, and that agreement clearly and unmistakenly delegates authority to the arbitrator to resolve "[a]ny dispute concerning" the Agreement, including "concerning the way it was formed; the arbitrability of any claim; enforceability, meaning, interpretation, or validity," this matter must be compelled to arbitration. The question raised by Plaintiffs involves the interpretation of the Agreement. Specifically, whether the phrase "such resulting action" means only Count Three, or all the claims brought by Plaintiffs. This same question poses a question or arbitrability of Plaintiffs' claims, which also must be determined by the arbitrator pursuant to the delegation provision. This question does not involve a "dispute over the legality of the prohibition on class, collective, representative, aggregate or

group actions."

To resist this result, Plaintiffs argue every case that has invalidated a class action waiver involved non-severability clauses which required all claims to proceed in court if the waiver was found invalid.  (Doc. 31 at 666.)  In these cases, Plaintiffs argue, all claims proceeded in court after invalidation of the class waiver provision.  (*Id.*)  True enough, but those cases involved materially different arbitration agreements, and no party disputed whether all claims would be litigated if the clauses were invalidated.  For instance, in *Parker*, the delegation and non-severability clause provided:

> **No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary relief (whether such monetary relief is described as legal damages or equitable relief) to any Employee, Participant or Designated Beneficiary other than the Claimant. [. . .] In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section 13.14, then the entire Arbitration Procedure (i.e., all of Section 13.13) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section 13.14.

*Parker*, 114 F.4th at 790; *Parker v. Tenneco Inc.*, No. 23-10816, 2023 WL 5350565, 2023 U.S. Dist. LEXIS 146605, *5-6 (E.D. Mich. Aug. 21, 2023).  Thus, in *Parker*, once the court determined the class waiver was unenforceable, the arbitration agreement provided that the entire arbitration procedure was "null and void."  All remaining claims could not be arbitrated, and there were no issues as to the arbitrability of the remaining claims.  Here, the critical question at this stage is what claims, if any, must be arbitrated.  Unlike in *Parker*, the Agreement does not

explicitly make the entire arbitration procedure null and void.  Instead, it provides that the "resulting action must be brought and maintained in a court."  But what is included in the "resulting action"?  That is a question of interpretation.  And "the arbitrability of any claim" and "enforceability, meaning, interpretation, or validity" of the Agreement "will be decided by the arbitrator."  (Doc. 25-1 at 250-51.)  Thus, this dispute must be decided by the arbitrator, not the Court.

In sum Counts One, Two, Four, Five, and Six must be compelled to arbitration.  The arbitrator, in the first instance, should consider the arbitrability of the claims considering the Agreement's language.  To the extent the arbitrator finds these claims arbitrable, the claims shall proceed in arbitration.  To the extent the arbitrator finds these claims non-arbitrable, the parties will resume litigation in this Court.  The Court does not reach the parties' remaining arguments regarding the arbitrability of the claims or the interpretation of the Agreement.

### C.  Stay Pending Arbitration

"[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."  *Fazio*, 340 F.3d at 396 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  In these situations, courts have applied both mandatory and discretionary stays to remaining claims when a court compels arbitration as to some, but not all, claims.  *See Riley v. NTAN, LLC*, 629 F.Supp.3d 805, 814-16 (M.D. Tenn. 2022) (discussing case law on mandatory and discretionary stays following motions to compel arbitration).  However, most courts hold such a stay is discretionary, subject to a balancing approach regarding judicial economy factors.  *Id.*; *see also Congdon v. Uber Techs., Inc.*, 226 F.Supp.3d 983, 990 (N.D. Cal. 2016) (it is "within a district court's discretion whether to stay, for considerations of economy and

efficiency, an entire action, including issues not arbitrable, pending arbitration."); *Reid v. Tandym Grp., LLC*, 697 F.Supp.3d 62, 75 (S.D.N.Y. 2023) (obtaining a stay of remaining non-arbitrable claims requires a showing that "there are issues common to the arbitration and the court proceeding, and then show that those issues will be finally determined by arbitration" in addition to judicial economy factors).

Sherwin-Williams argues a stay is warranted because the predicate for Plaintiffs' claims in Counts One, Two, Four, Five, and Six is the same predicate for the breach of fiduciary duty claim in Count Three.  (Doc. 25 at 238.)  That is, Sherwin-Williams argues all of Plaintiffs' claims stem from their allegations that Sherwin-Williams improperly imposed a tobacco user surcharge.  (*Id.*)  If that is proven true, it will materially and substantially effect Count Three. (*Id.*)  Plaintiffs take no position on whether a stay is warranted if the claims are compelled to arbitration.  (*See generally* Doc. 31.)

A discretionary stay is warranted in this case while Counts One, Two, Four, Five, and Six are arbitrated.  If the arbitrator finds Counts One, Two, Four, Five, and Six are not subject to arbitration, all claims will proceed in this Court without prejudice to any party and without undue delay.  If the arbitrator finds Counts One, Two, Four, Five, and Six are subject to arbitration, there is significant overlap between the facts and issues to be arbitrated with Count Three.  If both matters proceed simultaneously, there will be duplicative efforts.  For instance, to prove their breach of fiduciary duty claim in Count Three, Plaintiffs will need to show Sherwin-Williams violated ERISA through its tobacco surcharge policy, precisely what the other claims in this case allege.  While there are potentially significant differences between Count Three and the other claims, all claims turn on the tobacco surcharge question.  Moreover, if Count Three proceeds in this Court while the arbitrator is deciding the initial arbitrability question, it may

result in needless expenditure of resources.  A discretionary stay is warranted here.

## III. CONCLUSION

For the reasons stated herein, Defendant The Sherwin-Williams Company's Motion to Compel Arbitration (Doc. 25) is GRANTED, and this matter is STAYED.  Defendant The Sherwin-Williams Company's Motion to Dismiss (Doc. 26) is DENIED without prejudice.  Plaintiffs have ten (10) business days from the date of the arbitrator's final decision to notify the Court the stay should be lifted.  Failure to do so may result in dismissal of this action.

**IT IS SO ORDERED.**

Date:  December 12, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE